## THE SCANDINAVIA.

(Circuit Court of Appeals, Second Circuit. December 4, 1907.)

### No. 84.

COLLISION—STEAM VESSELS CROSSING—VIOLATION OF STARBOARD HAND RULE.
The steam vessel New Brunswick left a slip in Jersey City in the evening, and proceeded up the river about 500 feet from the New Jersey shore, the river being there 4,000 feet wide. Two minutes later the ferryboat Scandinavia left her slip on the New York side about opposite that of the New Brunswick, and proceeded up and diagonally across the river toward the Hoboken ferry, and when near such ferry the vessels came into collision. *Held*, that the Scandinavia, starting so near the time of the New Brunswick, and being the faster, was not an overtaking vessel, but that the starboard hand rule governing crossing vessels applied and required the New Brunswick to keep out of the way and avoid passing ahead of the Scandinavia, and that her failure to observe such rule on proper signal from the Scandinavia rendered her in fault for the collision.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 197–199.

Overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

Appeal from the District Court of the United States for the Southern District of New York.

Robinson, Biddle & Benedict (Roderick Terry, Jr., and W. S. Montgomery, of counsel), for appellant.

James J. Macklin and L. S. Gove, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The decision of this court in the case of The Islander, 152 Fed. 385, 81 C. C. A. 511, rendered after the decision of the District Court in the present case, makes the narrow channel rule inapplicable here. If, therefore, the New Brunswick's only fault lay in its failure to observe that rule, we could not sustain the decision below. But we think that the District Court was right in also holding the New Brunswick negligent for violating the starboard hand rule, and that the rule governing overtaking vessels did not apply.

The better evidence shows that the New Brunswick left the railroad slip at Jersey City at 8:30 p. m., moved into the stream and proceeded up the river about 500 feet out from the New Jersey shore. She was bound for the Twenty-Third street slip, Manhattan. At 8:32 p. m. the Scandinavia came out of the Barclay street slip, and proceeded up and diagonally across the river toward the Hoboken ferry. The railroad slip at Jersey City is nearly opposite the Barclay street slip, and the river is about 4,000 feet wide. The collision occurred near the Hoboken ferry—both vessels having practically kept their courses. From this statement it is apparent that the New Brunswick could not have got under headway, gone out into the stream, and proceeded so far up

the river before the Scandinavia started that those on board the Scandinavia could not have seen her starboard light. Considering the time—not more than two minutes—the speed of the New Brunswick, and the width of the river, it is impossible that the Scandinavia should have been an overtaking vessel within the meaning of the rule, when she left her slip; and, as she was faster than the New Brunswick, she manifestly did not become one afterwards.

If the overtaking rule did not apply, the starboard hand rule did. The vessels were proceeding on diagonal courses, and the New Brunswick had the Scandinavia on her starboard hand. It was the duty of the former to avoid the latter. She did not do so, and the collision occurred.

The New Brunswick, therefore, was at fault in failing to observe the starboard hand rule. The Scandinavia gave the proper signal, kept her course, and observed the rule.

The decree of the District Court is affirmed, with costs.